551 A.2d 135

**FAIRCHILD SPACE COMPANY, et al.**

v.

**Susan M. BAROFFIO.**

**No. 1147, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Jan. 3, 1989.

E. Joseph Fitzpatrick, Jr. and Michael D. Dobbs, Gaithersburg, for appellants.

John F. Mitchell, Washington, D.C., for appellee.

Argued before GARRITY, ALPERT and WENNER, JJ.

ALPERT, Judge.

While, in the work-place, being an "early-bird" is oft times commendable, when injury occurs on the early path it is often not compensable. Susan Baroffio, the appellee, filed a claim with the Maryland Workers' Compensation Commission under section 15 of article 101 of the Maryland Annotated Code[1] for injuries sustained in an automobile accident when she was enroute to work one-half hour earli-

---

1. In pertinent part, article 101, section 15 provides:
   Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury, . . . .

er than usual. The Commission made an "Award of Compensation," and the Fairchild Space Co. ("Fairchild"), Baroffio's employer and appellant, appealed the award to the Circuit Court for Montgomery County. After a trial on an agreed statement of facts, the Circuit Court (Ruben, J. presiding) affirmed the decision of the Commission. Fairchild appealed to this court. Both parties consented to proceed on an expedited appeal and submitted an agreed statement of facts.

## FACTS

At the time of the accident, Ms. Baroffio was a salaried employee with Fairchild Space Co. Her duties as an Associate Contract Administrator required her to work whatever hours necessary, without receiving overtime pay, to complete a task. Consequently, she sporadically came into work on the weekends and remained later than her regular working hours during the week.

During the summer of 1986, Baroffio was assigned to work on an Air Force contract. On September 5, 1986 (a Friday), her supervisor told Baroffio to arrive at work a half-hour early the following Monday morning to prepare for a 7:30 a.m. presentation to two other contract personnel that morning. To prepare for the Monday morning presentation, Baroffio stayed at work late on Friday, copied the pertinent material, and took it home with her. She came back to work on Saturday for approximately one and one-half hours, and she worked on the presentation at home on Sunday evening.

On Monday, September 8, 1986, she left for work one half-hour earlier than usual. She was driving her own car, took her usual route, and did not detour for any personal reasons, nor for any employment reasons. At approximately 6:45 a.m., she was involved in a single car accident, in which she sustained the injuries for which she seeks compensation.

## "Arising Out of and in the Course of His Employment" and the "Coming and Going" Rule

An employee may only receive compensation from his employer for injuries sustained "arising out of and in the course of his employment." *See* Md.Ann.Code, art. 101, § 15 (1957). As a general rule, injuries sustained by an employee while coming to or leaving his place of employment do not arise "out of and in the course of his employment." The supporting reasons for this rule are cogently explicated at § 6.6 *Maryland Workers Compensation Handbook*, Gilbert & Humphreys (1988):

§ **6.6 Going To and From Work.**

Injuries sustained while an employee is traveling to or from the workplace ordinarily are not compensable. This is so because the hazards which employees face during daily commuting trips are common to the public at large. The risks to which an employee is exposed while going to or coming from work are no different from the ones which confront workers while they are traveling on personal excursions. Since the Act is designed to provide compensation for work-related injuries, the courts of this State have refused to convert employers into general insurers for their employees.

*See also Wiley Mfg. Co. v. Wilson,* 280 Md. 200, 206, 373 A.2d 613 (1977); *Director of Finance v. Alford,* 270 Md. 355, 359, 311 A.2d 412 (1973); *Coats & Clark's Sales Corp. v. Stewart,* 39 Md.App. 10, 13, 383 A.2d 67 (1978). Over the years several exceptions to the "coming and going" rule have developed that allow an employee to recover for such injuries. In the case *sub judice,* we are only concerned with the "dual purpose" and the "special errand or mission" exceptions.[2]

---

**2.** A seminal case in the area is *Marks' Dependents v. Gray,* 25 N.Y. 90, 167 N.E. 181 (1929). Chief Judge Cardoza (later Justice Cardoza of the U.S. Supreme Court), writing for the Court of Appeals of New York, provided:

## Dual Purpose Exception

■ The modern "dual purpose" exception is succinctly set forth in Larson's treatise on *Workmen's Compensation Law:*

Injury during a trip which serves both a business and a personal purpose is within the course of employment if the trip involves the performance of a service for the employer which would have caused the trip to be taken by someone even it it had not coincided with the personal injury.

1 Larson, *Workmen's Compensation Law,* § 18.00 (1985). Elaborating on this definition, Larson further explains that:

when a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone.

*Id.,* § 18.12 at 4–253—4–266.

In addition,

If work is done at home for the employee's convenience, the going and coming trip is not a business trip within the dual-purpose rule, since serving the employee's own convenience in selecting an off-premises place in which to do the work is a personal and not a business purpose. The actual performance of the work itself may,

---

If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.

*Id.* 167 N.E. at 183. There the court applied the above standard in reversing an award under New York's Workmen's Compensation laws. The court held that the fact that the decedent's employer requested him to run a short errand for him while he was on his way to visit relatives in the same town did not establish an injury "arising out of and the course of employment."

under the rules in the next sub-section, be within the course of employment; but the trip is not, since it is transfer of the location of the performance and not the performance itself that serves the employee's personal purposes.

Larson, *supra,* § 18.33 at 4–316.

There is no evidence that Baroffio's supervisor or anyone else at Fairchild Space Co. required her to prepare this presentation at home. To the contrary, Baroffio admits that she stayed late at work on Friday evening and came in to work on Saturday afternoon in order to prepare the presentation.[3] Preparation for the presentation at home was a matter of her personal convenience and not compelled by the dictates of her employer. Baroffio would have made the trip home for the weekend and the trip to work the following Monday without regard to the business purpose she relies on.[4]

Contrary to the appellee's argument, we think that *Stoskin v. Board of Educ.,* 11 Md.App. 355, 274 A.2d 397 (1971), is squarely applicable. In *Stoskin,* a new school teacher was injured in a fall off-premises while reporting for her first full day of work. Because she had missed a new teacher's orientation, Stoskin had been told by her principal the day before her fall to take certain school books home and familiarize herself with them by the beginning of next day's classes. She attempted to rely on the "dual purpose" doctrine to receive compensation for her injuries. On appeal, this court referred to Larson's treatise and held:

> We think it plain that the "dual purpose" doctrine has no application to the facts of this case. At best, the

---

**3.** We do not address the situation where an employee is compelled to work on a day on which he or she does not normally work and, on that day, sustains injuries on the way to or leaving the place of employment.

**4.** For the present analysis, the fact that Ms. Baroffio was required to come into work one half hour early does not change the fact that she was still required to report to work on that day, took the same route, and was not subject to any extra hazards as a result of reporting early.

record shows that appellant's employer gave her school books to study and become familiar with before the opening of school the following day, and that appellant was carrying them when she slipped on a coca-cola bottle off the school premises when coming to work. There is no evidence showing any agreement, either express or implied, between appellant and her employer that appellant was undertaking, outside of her regular place of employment, a special assignment for her employer's benefit, commencing from the time she left the school premises with the books and continuing, without interruption, until she returned to the school the following day. *Even if it could be concluded that appellant was in the course of her employment when reviewing the school books, we think her review necessarily ended before she began her regular trip to work the following day.* We thus conclude that this case comes squarely within the general rule that employees who suffer injuries on their way to work are excluded from benefits of the workmen's Compensation Act.

*Id.* 11 Md.App. at 359, 274 A.2d 397 (emphasis added). Even if the court had conceded the argument that the review of the school books was in the scope of Stoskin's employment, the injury on the way to school the next day was not. Because there is no evidence that appellant required appellee to perform the work at home, the "dual purpose" exception to the "coming and going" rule is inapplicable. *Accord Crouse v. Workmen's Comp. Appeal Bd.,* 57 Pa.Cmwlth. 430, 426 A.2d 749 (1981).

### Special Errand or Mission

█ The "special errand" exception is relied upon by appellee as her primary argument for her right to receive Workers' Compensation benefits. In Maryland, this exception has primarily been relied upon by employees who were regularly "on call," and who were actually called into work when the injuries were sustained. *See, e.g., Director of Finance v. Alford,* 270 Md. 355, 311 A.2d 412 (1973) (police

officer on-call because of potential civil unrest); *Reisinger–Siehler Co. v. Perry,* 165 Md. 191, 167 A. 51 (1933) (on-call employee who was responsible for the security of the building). *See also Maryland Worker's Compensation* § 6.7–2.

Larson states:

> The special errand rule may be stated as follows: When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

1 Larson, *Workmen's Compensation Law,* § 16.11 (1985). In general, the rule does not apply "when the only special component is the fact that the employee began work earlier or quit work later than usual." [5] *Id.* § 16.14 at 4–150. It is also noted by Larson that "[t]he element of urgency may supply the necessary factor converting a trip into a special errand." *Id.* § 16.15 at 4–161.

This court examined the "special errand" exception in a non-"on call" situation in *Coats & Clark's Sales, supra.* Although that case is factually inapposite, we noted that "[t]he essential characteristic of a special errand or mission is that it would not have been undertaken except for the obligation of employment." *Id.* 39 Md.App. at 13, 383 A.2d 67.

Although a wide discrepancy in the facts and conclusions exists in the many out-of-state opinions addressing the "special errand" exception, one such case is persuasive. In *Trent v. Collin S. Tuttle & Co., Inc.,* 20 A.D.2d 948, 249

---

**5.** Larson does provide that if the employee is required to report to work so early or remain so late that hazards are created or magnified, then this element alone may be sufficient to transform the trip into a special errand. *Id.* at 4–154—4–157.

N.Y.S.2d 140 (N.Y.Sup.Ct., App.Div.1964), the appellant, an executive secretary, was required to turn in a report by 9:15 a.m. the next day. She stayed at work late, completed the report that night at home, and came in to work early the next day to type it. She sustained injuries while alighting from a bus on her way to work. The New York court rejected the appellant's special errand argument:

> If this argument were accepted, any time an employee performed even an occasional piece of work at home at his employer's direction or even with his employer's permission or knowledge express or implied the risks of travel to and from employment on such an occasion would be incidents of employment. Such a position is untenable. Rather it would seem that unless the employee's home is truly a second employment location in that more than occasional employment services are required to be rendered there (see *Matter of Tiernan v. Potter*, 281 App. Div. 787, 118 N.Y.S.2d 431) travel to and from work is not a risk of employment. Here claimant on her own initiative and without her employer's knowledge chose to take the work home rather than complete it at her place of employment. Such action alone does not create a second situs of employment. Nor does the fact that she altered her schedule to arrive early to complete her assignment affect the result since it has no bearing on the happening of the accident.

*Id.* 249 N.Y.S.2d at 141–42.

Ms. Baroffio was given a project that required her to perform some work over the weekend so that a presentation could be made the following Monday. In addition, she was required to report to work a half hour earlier than she usually did on Monday. She is a salaried employee who occasionally must perform some tasks outside of regular work hours. No evidence exists that her required arrival at work a half-hour earlier to present the report constitutes a hazard that would justify application of the doctrine. Further, the employer did not require her to perform the task at home. This court does not think that the policies behind

the Workers' Compensation laws are furthered by stretching the application of the "special errand" exception to situations such as the one presently before us.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.