WILLIAM L. KNOCHE *v.* ROBERT ALLAN COX, INDIVIDUALLY AND AS SURVIVING HUSBAND OF DIXIE LEE COX

[No. 164, September Term, 1977.]

*Decided April 25, 1978.*

448

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*B. Ford Davis,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*Bertram M. Goldstein,* with whom were *Jacob & Goldstein* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Dixie Lee Cox was employed as a dental assistant by William L. Knoche, D. D. S. She was killed by the negligent act of Knoche. The issue for decision is whether, under the circumstances of the accident, Knoche's liability for her death was exclusively under the provisions of the Workmen's Compensation Act, Maryland Code (1957, 1964 Repl. Vol., 1977 Cum. Supp.) Art. 101, § 1, *et seq.* (the Act). We hold that it was.

## I

The accident occurred on 4 April 1975 in Knoche's dental office. Mrs. Cox reported for work about 8:00 o'clock that morning and was to work until 6:00 p.m. About 12:40 p.m. she was in a hallway of the dental suite, just outside Knoche's private office, cleaning up dental powder spilled on the floor of the hallway, a task within the usual scope of her duties. Knoche had a patient in the dental chair. Apparently the patient was interested in handguns, and Knoche showed him a 9 mm Browning pistol which the doctor had in his office. While Knoche was attempting to eject a round from the pistol, the weapon discharged. The bullet went through the composition wall between the office and the hallway, struck Mrs. Cox and fatally wounded her.

A suit founded in negligence was filed in the Circuit Court for Baltimore County against Knoche by Robert Allan Cox. As amended, count one of the declaration was a wrongful death action by Cox, individually and as surviving husband of the deceased, to his own use and to the use of the deceased's surviving parents. Count two was an action on behalf of Cox as personal representative of the estate of the deceased. Knoche pleaded the general issue and that the cause of action was barred by the exclusive remedy provisions of § 15 of the Act. The case went to trial before a jury. Knoche's motions for a directed verdict at the end of Cox's case and at the close of all the evidence were denied. The jury returned verdicts in favor of Cox — individually and as surviving husband, and to the use of the deceased's parents, and as personal representative of the estate of the deceased. Knoche noted an appeal to the Court of Special Appeals from the judgments absolute entered on the verdicts. We issued a writ of certiorari before decision by that court. Knoche contends that the trial court erred in denying his motion for a directed verdict made at the close of all the evidence.

## II

The rationale of the Act and the basic philosophy underlying it were clearly set out by the General Assembly

in the Preamble to the legislation enacted some sixty-four years ago:

"WHEREAS, The State of Maryland recognizes that the prosecution of various industrial enterprises which must be relied upon to create and preserve the wealth and prosperity of the State involves injury to large numbers of workmen, resulting in their partial or total incapacity or death, and that under the rules of the common law and the provisions of the statutes now in force an unequal burden is cast upon its citizens, and that in determining the responsibility of the employer on account of injuries sustained by his workmen, great and unnecessary cost is now incurred in litigation, which cost is borne by the workmen, the employers, and the taxpayers, in part, in the maintenance of courts and juries to determine the question of responsibility under the law as it now exists; and

WHEREAS, in addition thereto, the State and its taxpayers are subjected to a heavy burden in providing care and support for such injured workmen and their dependents, which burden should, insofar as may be consistent with the rights and obligations of the people of the State, be more fairly distributed as in this Act provided; and

WHEREAS, the common law system governing the remedy of workmen against employers for injuries received in extra-hazardous work is inconsistent with modern industrial conditions; and injuries in such work, formerly occasional, have now become frequent and inevitable."

It was therefore, that the State, exercising its police and sovereign power, declared:

"NOW, THEREFORE, The State of Maryland, exercising herein its police and sovereign power, declares that all phases of extra-hazardous employments be, and they are hereby withdrawn

from private controversy, and sure and certain relief for workmen injured in extra-hazardous employments and their families and dependents are hereby provided for, regardless of questions of fault and to the exclusion of every other remedy, except as provided in this Act." [1]

At the time of the occurrence here, § 15 of the Act provided:

"Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury, except where the injury is occasioned by willful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty or solely from the effect upon him of any narcotic, depressant, stimulant, hallucinogenic or hypnotic drug or from the effect upon him of any other drug which renders him incapable of satisfactorily performing his job except when such drug has been administered or taken in accordance with a physician's prescription. Where the injury is occasioned by the willful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results

---

1. Today employees are subject to the provisions of the Act by legislative mandate rather than because of inherent danger in the type of employment. Generally, "[e]very person, ... whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, express or implied..." and "[e]very person performing services for remuneration in the course of the trade, business, profession or occupation of an employer at the time of the injury ..." constitute employees within the contemplation of the Act. Maryland Code (1957, 1964 Repl. Vol., 1977 Cum. Supp.) Art. 101, § 21 (b) (1) and (5). Section 21 (c) designates those employees who are exempt from the coverage of the Act. It is clear that Mrs. Cox was an employee subject to the provisions of the Act.

> solely from the intoxication of the injured employee while on duty or solely from the effect upon him of any narcotic, depressant, stimulant, hallucinogenic or hypnotic drug or from the effect upon him of any other drug which renders him incapable of satisfactorily performing his job, neither the injured employee nor any dependent of such employee shall receive compensation under this article."

Knoche was an employer subject to the provisions of the Act. § 21 (a) (1). Mrs. Cox was an employee subject to the provisions of the Act. § 21 (b); note 1, *supra.* The exceptions arising when an injury is occasioned by wilful intention of the injured employee or results solely from the intoxication of the injured employee or solely from the effect of a drug are not applicable in the circumstances. Section 15 of the Act then spells out the exclusiveness of the liability in accord with the declaration expressed in the Preamble:

> "The liability prescribed by the past preceding paragraph shall be exclusive, except that if an employer fails to secure the payment of compensation for his injured employees and their dependents as provided in this article, an injured employee or his legal representative in case death results from the injury, may, at his option, elect to claim compensation under this article, or to maintain an action in the courts for damages on account of such injury; and in such an action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee."

The option under the "exclusive" provisions of § 15 was not available to Cox because Knoche had, as was stipulated, secured the payment of compensation for his employee, Mrs. Cox, and her dependents as provided in the Act.

This Court, long past and to the present day, has uniformly said that, aside from the exceptions created by the Act itself,

the operation of the law is exclusive of all other remedy and liability, as to both the employer and employee who come within the purview of the Act, with respect to all injury arising out of and in the course of the employment. *Victory Sparkler Co. v. Francks,* 147 Md. 368, 375, 128 A. 635 (1925) and cases cited therein. *See Wood v. Aetna Cas. & Surety Co.,* 260 Md. 651, 659-661, 273 A. 2d 125 (1971). *Victory Sparkler* summed it up this way:

> "In other words, the statute has given to labor what it never had before, and has taken from capital what it had always enjoyed, and has compensated the latter by limiting its liability, while engaged in hazardous employment, and conforming to the act, to the payment of compensation only to those who sustain an injury, arising out of and in the course of their employment, that is compensable under the act." 147 Md. at 376-377.

In short, the action here could be maintained only if the accidental personal injury which resulted in the death of Mrs. Cox did not arise out of and in the course of her employment.[2]

"The words 'out of' and 'in the course of' employment as used in the Workmen's Compensation Act are not synonymous . . . ." *Pariser Bakery v. Koontz,* 239 Md. 586, 590, 212 A. 2d 324 (1965). When both conditions are satisfied, the injury is within the operation of the Act. *Perdue v. Brittingham,* 186 Md. 393, 402, 47 A. 2d 491 (1946).

---

2. There is nothing in conflict between the Workmen's Compensation Act and the Wrongful Death Act, Maryland Code (1974, 1977 Cum. Supp.) § 3-901 through § 3-904 of the Courts and Judicial Proceedings Article. The two acts are in *pari materia* and must be construed together. State v. Sherman, 234 Md. 179, 184, 198 A. 2d 71 (1964); Taylor v. State, Use of Mears, 233 Md. 406, 407-413, 197 A. 2d 116 (1964); Storrs et al. v. Mech et al., 166 Md. 124, 129, 170 A. 743 (1934).

Compare the provisions of § 58 of the Workmen's Compensation Act which are applicable when injury or death for which compensation is payable under the Act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof. *See* Gray v. State Roads Comm'n, 253 Md. 421, 424-430, 252 A. 2d 810 (1969). *See also* § 67 (6) of the Act wherein accidental injury "includes an injury caused by the wilful or negligent act of a third person directed against an employee *in the course of his employment*" (emphasis added), as construed in Giant Food, et al. v. Gooch, 245 Md. 160, 225 A. 2d 431 (1967).

We said in *Maryland Casualty Co. v. INA,* 248 Md. 704, 238 A. 2d 88 (1968):

> "The words 'in the course of employment' refer to the time and place of an accident and the circumstances under which it occurs, *Coates v. J. M. Bucheimer Co.,* 242 Md. 198, 218 A. 2d 191; *Hill v. Liberty Motors,* 185 Md. 596, 45 A. 2d 467; but whether a given injury is in the course of the employment is determined by the facts and circumstances of each particular case. *Coates v. J. M. Bucheimer Co., supra; Dept. of Correction v. Harris,* 232 Md. 180, 192 A. 2d 479. In making this determination, the entire sphere and period of employment may be considered and also whether the employee has placed himself outside his employment and, if so, how far. *Dept. of Correction v. Harris, supra; Watson v. Grimm,* 200 Md. 461, 90 A. 2d 180; *Baltimore v. Schwind,* 175 Md. 60, 199 Atl. 853." *Id.* at 707-708.

We put it concisely in *Watson,* 200 Md. at 466:

> "[A]n injury arises 'in the course of employment' when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incident thereto."

*See Proctor-Silex v. De Brick,* 253 Md. 477, 480, 252 A. 2d 800 (1969); *Pariser Bakery,* 239 Md. at 590; *Harris,* 232 Md. at 184. As the injury to Mrs. Cox happened during the period of her employment on the business premises while she was fulfilling her duties, it is perfectly clear that she was injured "in the course of employment."

Although Cox does not dispute that the injury to his wife occurred in the course of her employment, he urges that it

did not arise out of her employment. We said in *Sica v. Retail Credit Co.,* 245 Md. 606, 227 A. 2d 33 (1967):

> "In determining whether an accident arose out of the employment, the Court 'has endeavored to keep in mind both the legislative mandate that the Workmen's Compensation Act shall be so interpreted and construed as to effect its general social purpose and the concomitant consideration that workmen, like other members of the general public, are not insured against the common perils of life.' *Tavel* [*v. Bechtel Corp.,* 242 Md. 299, 303, 219 A. 2d 43 (1966)]. During the last decades, the spectrum of the employer-employee relationship has been greatly widened, but the coverage of the Act has not been extended. As in other fields of the law, the problem is to apply the governing legal principles to the particular facts. In the case before us, the enlarged scope of the relationship is one of the facts to be considered." *Id.* at 612.

As distinguished from "in the course of employment" which, as we have seen, refers to the place, time and circumstances under which the accident resulting in the injury or death occurs, "out of the employment" refers to the cause or origin of the accident. *Coates,* 242 Md. at 201; *Harris,* 232 Md. at 183. Much has been said about the rule that there be a causal connection between the injury and the work for an injury to arise "out of the employment." *See Proctor-Silex,* 253 Md. at 480-481; *Blake Construction v. Wells,* 245 Md. 282, 289-290, 225 A. 2d 857 (1967) (quoting *Consol. Engineering Co. v. Feikin,* 188 Md. 420, 424-425, 52 A. 2d 913 (1947)), and the cases cited in *Blake Construction* at 290 as restating, rephrasing and refining the rule. It all boils down, however, to the principle that "the injury arises out of employment when it results from some obligation, condition or incident of the employment, under the circumstances of the particular case." *Harris,* 232 Md. at 184. *See Proctor-Silex,* 253 Md. at 480; *Pariser Bakery,* 239 Md. at 589; *Scherr v. Miller,* 229 Md. 538, 543, 184 A. 2d 916 (1962); *Perdue,* 186 Md. at 402. The

causative danger " 'need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " *Hill v. Liberty Motors,* 185 Md. 596, 607-608, 45 A. 2d 467 (1946) (quoting *Schemmel v. Gatch & Son Etc. Co.,* 164 Md. 671, 683, 166 A. 39 (1933) which approved the statement in *McNicol's Case,* 215 Mass. 497, 102 N. E. 697 (1913)). *See* cases cited in *Hill* at 608 and in *Schemmel* at 683. *See also Blake Construction,* 245 Md. at 289-290; *Reeves Motor Co. v. Reeves,* 204 Md. 576, 582, 105 A. 2d 236 (1954); *Consol. Engineering Co.,* 188 Md. at 425; *Rice v. Revere Copper & Brass, Inc.,* 186 Md. 561, 568, 48 A. 2d 166 (1946).

> "In other words, it is not necessary that there should exist a direct, active, or physical connection between the act causing the accident and the employment, but it is sufficient if the accident, without having for its cause the serious and willful misconduct of the servant, arises directly out of circumstances which the servant had to encounter because of his special exposure to risks that, although external, were incidental to his employment." *Boteler v. Gardiner-Buick Co.,* 164 Md. 478, 482, 165 A. 611 (1933).

*See Spencer v. Ches. Paperboard Co.,* 186 Md. 522, 526, 47 A. 2d 385 (1946); *Mattes v. Baltimore,* 180 Md. 579, 582, 26 A. 2d 390 (1942); *Refining Company v. Forrester,* 180 Md. 517, 524-525, 25 A. 2d 667 (1942). *See also Barfield v. Giant Food, Inc.,* 16 Md. App. 726, 730, 299 A. 2d 523 (1973); *Klein v. Terra Chemicals Int'l,* 14 Md. App. 172, 178, 286 A. 2d 568, *cert. denied,* 265 Md. 740 (1972). "We have given a broad construction . . . to [the words 'arising out of'] as used in the Workmen's Compensation Act, Code (1957), Art. 101, sec. 15." *National Indemnity v. Ewing,* 235 Md. 145, 149, 200 A. 2d 680 (1964).

In the circumstances of this case, the injury resulted from an incident of Mrs. Cox's employment. Why Knoche had the pistol in his office, why he was handling it at that particular

time, the knowledge or lack of knowledge of Mrs. Cox of the pistol's presence in the office, Knoche's admitted negligence in its discharge, are all immaterial to the question whether the injury arose out of her employment. Mrs. Cox had not stepped aside from her employment; she was not guilty of any deviation from her duties; she was exposed to the injury she suffered by reason of her employment. *See Petrelli v. The Kimball Tyler Co.,* 186 Md. 604, 611, 48 A. 2d 169 (1946). There was no break in the chain of causation between her employment and the injury. *Watts v. Young Company,* 245 Md. 277, 280, 225 A. 2d 865 (1967).

The essential terms and manner of the employment of Mrs. Cox were undisputed. The material facts pertaining to her injury were uncontradicted. Among the great number of prior cases decided by this Court relating to the "out of employment" requirement, we find none which would serve as authority to bar compensation under the Act were it sought in the circumstances here. On the contrary, to preclude such compensation would not only depart from our previous decisions but would violate the raison d'être of the Act, prostitute its rationale and seriously erode its operation and effect. "The general rule in workmen's compensation cases is that before a motion for directed verdict may be granted for the employer, the court must assume the truth of the evidence presented by the claimant and all the inferences of fact fairly deducible from it. *Coates v. J. M. Bucheimer Co., Inc.,* 242 Md. 198, 218 A. 2d 191 (1966) and cases therein cited. Where the testimony of the plaintiff's witnesses is in direct conflict on a material issue of fact, the resolution of the factual conflict is usually left to the jury. *Ferguson v. Wootten,* 240 Md. 186, 190-91, 213 A. 2d 498 (1965)." *Mize v. Beauchamp Associates,* 245 Md. 583, 587, 227 A. 2d 5 (1967). Here there was no direct conflict on a material issue of fact. The issue whether Mrs. Cox's injury was in the course of and arose out of her employment was one of law. The question being clearly one of law, not of fact, we find, on the uncontradicted evidence, as conclusions of law, that the death of Mrs. Cox resulted from an accidental injury arising out of and in the course of her employment. *See Sica,* 245 Md. at 621.

Thus, Mrs. Cox's death was compensable under the Act and because it was, as we have seen, Knoche's liability was confined to that compensation, and the action brought against him could not prevail. The court, assuming the truth of the evidence presented by the claimant and all inferences of fact fairly deducible from it, improperly ruled that the evidence was legally sufficient to submit the question of whether the injury was compensable to the jury. *Cf. Coates,* 242 Md. at 202. "Where it is manifest to the court upon the plaintiff's own showing in the uncontradicted evidence in the case that there is no rational ground upon which a verdict can be based for the plaintiff, it becomes the duty of the court to direct a verdict for the defendant . . . ." *Lusby v. First Nat'l Bank,* 263 Md. 492, 506, 283 A. 2d 570 (1971). Therefore, it was error for the trial court to deny Knoche's motion for a directed verdict made at the close of all the evidence. Maryland Rule 552. We reverse the judgments and enter a judgment for costs in favor of Knoche. Rule 875.

> *Judgments reversed; judgment entered in favor of appellant for costs below; costs on appeal to be paid by appellee.*